FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 32

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45398-3-II |
| Respondent, | |
| v. | |
| BRIAN EDWARD WILSON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — A jury found Brian Edward Wilson guilty of third degree child molestation based on an incident at a Port Orchard ferry dock. Wilson appeals, contending that the trial court erred by allowing the State to use the term "victim" and by continuing the trial over Wilson's objection. Wilson also filed a statement of additional grounds (SAG) alleging additional error. We hold that (1) use of the term "victim" was not improper, but even if it were, any alleged error is harmless, (2) the court properly granted Wilson's trial attorney's motion to continue even over Wilson's objection, (3) Wilson's ineffective assistance of counsel claim fails, and (4) Wilson's remaining SAG claims rely on facts outside the record and fail to inform this court as to the nature and occurrence of other alleged errors such that we decline to review those claims. Therefore, we affirm.

FACTS

In March 2013, Kitsap Transit driver Helen Henry pulled her bus into the passenger ferry stop in downtown Port Orchard. As she did so, Henry noticed Wilson pressing against a young woman. Henry could see that Wilson had his chin and arm over the woman's shoulder and that he was blowing cigarette smoke in the woman's face. According to Henry, Wilson appeared to be under the influence of alcohol, drugs, or both. Henry asked the young woman, H.B., if she was okay and whether she needed Henry to call someone on her behalf. H.B. declined, then boarded Henry's bus.

Laura Talkington was also at the passenger ferry dock on the day of the incident. Talkington noticed H.B., a former acquaintance, who appeared frightened and distressed as Wilson stood behind H.B. with his body pressed against her back. When H.B. saw Talkington, H.B. mouthed the word "help." 3 Report of Proceedings (RP) at 96. Talkington told Wilson that H.B. was only 15 years old and that he needed to leave her alone. Talkington then informed two nearby Port Orchard police officers that they needed to address the developing situation.

Officer Patrick Pronovost and Officer David Walker responded to Talkington's request. Officer Pronovost saw Wilson leaning over H.B. According to Officer Pronovost, H.B. looked as though she did not want Wilson to be there.

H.B. explained that she was at the passenger ferry dock when Wilson, whom she did not know, came up to her and attempted to initiate conversation. H.B. did not respond. Despite her refusal, Wilson tried to kiss her. Confused, H.B. backed away, but Wilson persisted, placing his hand down H.B.'s shirt and touching her breast. Wilson then tried to kiss H.B. a second time. After H.B. told the police what happened, the officers placed Wilson under arrest.

The State charged Wilson with third degree child molestation.[1] Before his trial, Wilson's attorney requested that the court continue the trial date, explaining that she needed additional time to prepare:

> My investigator and I have been working with Mr. Wilson with regard to trying to locate some witnesses that he believes can be helpful in potentially providing a defense for him. It's been a bit of a struggle to get identifying information for these witnesses.

RP (May 16, 2013) at 2. The State objected. Wilson himself also protested, asking why his trial date could not be sooner. But the trial court granted the motion over both objections.

Before trial began, Wilson moved in limine to preclude the State from referring to H.B. as the "victim." The State objected, and the trial court denied the motion. The trial court noted, and Wilson did not disagree, that Wilson's position was that he was not involved in any crime, not that H.B. was not victimized in some capacity.

The State's witnesses testified consistently with the facts as described above. Wilson called no witnesses and did not testify. Wilson's defense was general denial.

During trial, the State and a State witness used the term "victim" to refer to H.B. a total of six times. First, the State asked a question regarding H.B's demeanor:

> [THE STATE]: You briefly described the *victim's* demeanor while she was still sitting at the bus station. Did you have additional contact with the *victim*?
> [OFFICER PRONOVOST]: Yes.

---

[1] "A person is guilty of third degree child molestation when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.089(1).

4 RP at 118 (emphasis added). The third and fourth use of the word occurred as part of the following exchange:

> [THE STATE]: So when you got there, what was your role in it?
> [OFFICER WALKER]: We arrived, the suspect was pointed out, and I immediately recognized him. So I sort of gravitated to the suspect, since I was the lead car and I was closer to him. So I went that way while Officer Pronovost spoke to *the victim.*
> [THE STATE]: Okay. Did you ever have a chance to talk to the *victim*?

4 RP at 123-24 (emphasis added). Officer Walker also referred to H.B. as the "victim" one additional time on cross-examination. Finally, the State referred to H.B. as the "victim" in its closing argument, noting Wilson's proximity to the "victim."

The jury found Wilson guilty of third degree child molestation. Wilson appeals.

## ANALYSIS

### I. IMPERMISSIBLE OPINION ON WILSON'S GUILT

Wilson argues that the trial court violated his constitutional right to a fair trial in which the jury is the sole judge of the facts when it allowed the State and its witnesses to refer to H.B. as the "victim." We hold that, in context, the State's use of the term "victim" was not an impermissible opinion on Wilson's guilt, and even if it were, any error is harmless beyond a reasonable doubt.

We review a trial court's decision on a motion in limine for an abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). An abuse of discretion exists when a trial court's exercise of its discretion is manifestly unreasonable or based on untenable grounds or reasons. *State v. Quaale*, __ Wn.2d __, 340 P.3d 213, 216 (2014).

"'Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant because it invad[es] the exclusive province of the [jury].'" *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642

4

(2009) (internal quotation marks omitted) (alterations in original) (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)). Admitting impermissible opinion testimony regarding the defendant's guilt may be reversible error because it violates a defendant's constitutional right to a jury trial, including the independent determination of the facts by the jury. *Demery*, 144 Wn.2d at 759.

Thus, witnesses may not offer opinions on the defendant's guilt, either directly or by inference. *King*, 167 Wn.2d at 331 (citing *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). Whether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an "ultimate issue" will generally depend on the specific circumstances of each case, including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994).

Testimony that does not directly comment as to personal belief of the defendant's guilt or the veracity of a witness is helpful to the jury, and testimony that is based on inferences from the evidence is not improper opinion testimony. *State v. Blake*, 172 Wn. App. 515, 528, 298 P.3d 769 (2012), *review denied*, 177 Wn.2d 1010 (2013). "The fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." *Heatley*, 70 Wn. App. at 579. And constitutional error, if any, is harmless if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. *See Quaale*, 340 P.3d at 218 (discussing constitutional harmless error as applied to improper opinions on guilt).

Here, whether Wilson was in fact guilty of the crime clearly is an "ultimate issue" in the case. Accordingly, we view the references to H.B. as the "victim" in context, considering the nature of the charges, the circumstances involved, the type of defense, and the nature of the testimony. Bearing these factors in mind, the references to the "victim" here do not rise to the level of impermissible opinions as to Wilson's guilt. Officers Pronovost and Walker testified that when they arrived on the scene, they encountered H.B. who was shaky, upset, and appeared intimidated. H.B. explained to the officers what had happened to her. For purposes of their investigation, H.B. was the "victim" as that term is used by law enforcement to refer to a complaining witness.

Moreover, the State merely asked the witnesses questions about whether they had an opportunity to speak to the victim and questions regarding H.B.'s perceived demeanor at the time of the incident. Neither the questions nor the responses give rise to an inference that the State presented impermissible opinions as to Wilson's guilt or the veracity of a witness. To constitute improper opinion as to a defendant's guilt, the testimony must "relate to the defendant." *State v. Wilber*, 55 Wn. App. 294, 298, 777 P.2d 36 (1989). No use of "victim" here related to Wilson specifically. And importantly, Wilson's defense was a general denial. Wilson denied committing the crime, but he did not argue that no crime had been committed.

Furthermore, our courts have previously held that use of the term "victim," while perhaps not encouraged, was harmless beyond a reasonable doubt. In *State v. Alger*, 31 Wn. App. 244, 640 P.2d 44, *review denied*, 97 Wn.2d 1018 (1982), a statutory rape case, the trial court read the following stipulation to the jury: "'There has been a stipulation . . . that [Alger] has never been married to the victim.'" 31 Wn. App. at 248-49. The court noted that "[i]n the context of a criminal

6

trial, the trial court's use of the term 'victim' has ordinarily been held not to convey to the jury the court's personal opinion of the case." *Alger*, 31 Wn. App. at 249. As such, the court held that "the one reference to 'the victim' by the trial judge, did not, under the facts and circumstances of this case, prejudice the defendant's right to a fair trial by constituting an impermissible comment on the evidence." *Alger*, 31 Wn. App. at 249.

Here, the State presented four uncontroverted witnesses who corroborated important aspects of H.B.'s version of the events. Even were we to consider the references to H.B. as the "victim" error, we hold that any error was harmless under the facts and circumstances of this case because any reasonable jury would have reached the same verdict beyond a reasonable doubt despite the alleged error.

## II. TIME FOR TRIAL

Wilson also argues that his time for trial rights were violated when the court continued his case beyond the original June 3 trial date over Wilson's objection. The State responds that Wilson's claim is waived under CrR 3.3(f)(2). We agree with the State and hold that Wilson's claim fails because the motion to continue was brought by Wilson's trial attorney, who has the authority to make binding decisions on his behalf.

CrR 3.3 governs time for trial and accords with the United States Supreme Court's determination that states can prescribe reasonable periods for commencement of trials consistent with constitutional standards. *State v. Ollivier*, 178 Wn.2d 813, 823, 312 P.3d 1 (2013). Under CrR 3.3(b)(1)(i), an individual held in custody pending trial must be tried within 60 days of arraignment. But certain time is excluded from the computation of this 60-day period, including

7

continuances granted by the trial court. CrR 3.3(e). With regard to continuances, CrR 3.3(f)(2) provides,

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. . . . The court must state on the record or in writing the reasons for the continuance. The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

Here, Wilson's trial attorney sought to continue Wilson's trial beyond the original time for trial date because she needed additional time to work with her investigator to locate witnesses she felt would be helpful to Wilson's defense. Our Supreme Court has concluded that counsel has the authority under CrR 3.3(f)(2) to make binding decisions to seek continuances. *Ollivier*, 178 Wn.2d at 825. Consequently, as the rule expressly provides, we hold that any objection is waived. *Ollivier*, 178 Wn.2d at 824; CrR 3.3(f)(2).

### III. STATEMENT OF ADDITIONAL GROUNDS

Wilson advances a number of arguments that essentially amount to a claim of ineffective assistance of counsel. Specifically, Wilson contends that his trial attorney failed to present key evidence and denied him a fair trial by not asking certain questions and by requesting that the court proscribe the State from eliciting certain testimony from its witnesses.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). An appellate court reviews an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable and giving exceptional deference when evaluating counsel's strategic decisions. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

When counsel's conduct can be characterized as a legitimate trial strategy or tactics, performance is not deficient. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Here, the majority of Wilson's claims of deficient performance by his trial attorney can be characterized as legitimate trial tactics. Wilson takes issue with his trial attorney's refusal to ask Henry what time the incident occurred and with the way his attorney phrased some of her questions during her cross-examination of the State's witnesses. But the record reveals that these are clearly strategic choices made by Wilson's attorney in her attempt to aid in his defense.

Wilson's mention of his attorney's request to prohibit the State from eliciting certain testimony is a reference to a motion in limine made before trial to exclude testimony regarding statements, presumably by Wilson, taken several weeks after the incident. Such a motion represents a similarly tactical choice by Wilson's attorney to prevent arguably irrelevant evidence from prejudicing her client.

Wilson's claim that his attorney refused to present key evidence that Wilson alleges would have changed the outcome of his trial relies on facts outside the record. And when a defendant raises issues that require evidence or facts not in the existing record, the appropriate means of doing so is through a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Accordingly, Wilson's ineffective assistance of counsel claim fails.[2]

Separately, Wilson makes a number of inquiries regarding facts that are not in the record. For instance, Wilson asks whether the police searched the area for other potential suspects or whether they arrested the only intoxicated person in the area, whether the police tested his blood

---

[2] Wilson also argues in his SAG that his attorney violated his time for trial rights by requesting to continue his trial. We addressed this issue above and, therefore, address it no further here.

No. 45398-3-II

alcohol levels, whether a nearby convenience store had a videotape of Wilson entering on the day of the incident, whether the victim identified Wilson when the police arrived, and other similar questions. But there are not corresponding facts in the record, and even if there were, Wilson does not explain how the answers to these questions affected his case. We hold that Wilson has failed to inform this court as to the nature and occurrence of these alleged errors. RAP 10.10(c). Consequently, we decline to reach his additional issues.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

MAXA, J.

LEE, J.

10